J-S10016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF R.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1494 MDA 2021 |

Appeal from the Decree Entered November 3, 2021
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  073-ADOPT-2021,
CP-21-DP-0000094-2020

| IN THE INTEREST OF: R.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1508 MDA 2021 |

Appeal from the Order Entered November 3, 2021
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s):  CP-21-DP-0000094-2020

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.*

MEMORANDUM BY McLAUGHLIN, J.:                **FILED:  MAY 24, 2022**

T.W. ("Mother") appeals from the decree terminating her parental rights

as to her minor child, R.W. ("Child"), as well as from the order changing the

_____

* Retired Senior Judge assigned to the Superior Court.

goal to adoption. Mother's counsel has filed an **Anders**[1] brief and a motion to withdraw as counsel. Upon review, we grant counsel's motion to withdraw, affirm the termination decree, and dismiss the appeal from the goal-change order as moot.

Child was born in 2012. The court adjudicated Child dependent in September 2020, due to inappropriate conditions and lack of food and running water in Mother's house. N.T., 11/2/21, at 38-39. There were eight previous referrals to Cumberland County Children and Youth Services ("CCCYS") regarding Mother dating back to 2008, before Child was born. All involved reports of a dirty and cluttered home and deplorable living conditions. **Id.** at 40. Child was placed in the legal and physical custody of CCCYS on September 21, 2020, and placed in emergency kinship care of a maternal cousin. CCCYS Ex. 3. Child was placed in a foster home on November 21, 2020, where she currently remains. N.T. at 65. Child's current foster home is a pre-adoptive home. **Id.** at 55, 68.

On October 22, 2021, CCCYS filed a petition for involuntary termination of Mother's parental rights. A hearing on the petition was held on November 2, 2021. CCCYS presented the testimony of Mother's caseworkers, Child's therapists, and foster mother. Mother testified on her own behalf.

---

[1] **Anders v. California**, 386 U.S. 738 (1967); **see also In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992) (holding **Anders** protections apply to appeals of involuntary termination of parental rights).

Mother's caseworker from Central PA Family Support Services, Kelly Stipe, testified that Mother's goals were to find appropriate housing, obtain adequate transportation, obtain and maintain employment, and address mental health issues. *Id.* at 11. Stipe stated that Mother failed to complete any of these goals in the three months that she worked with her, and her services were closed in November 2020 due to lack of engagement by Mother. *Id.* at 11-13.

Mother's CCCYS caseworker, Sandra Gibson, testified that although Mother lived briefly with a neighbor and at a hotel, she believed that Mother was back living in the trailer that had the initial habitability issues. *Id.* at 41. She stated that Mother sometimes slept in her car due to lack of air conditioning in the trailer. *Id.* at 42. Gibson testified that she repeatedly directed Mother to complete a housing application through the Housing Authority, but Mother did not do so until March 2021 and she is now on a long waiting list. *Id.* at 45-46. Gibson stated that despite her efforts in providing mental health treatment resources, Mother has had various excuses as to why she has not sought mental health treatment. *Id.* at 46-47. Gibson said that Mother has community visits with Child three times per week and has consistently visited Child. *Id.* at 48, 58. Gibson testified that Mother has not reached out to the foster parents or to Child's school to inquire about Child's well-being. *Id.* at 48-49. Gibson stated that Mother has maintained employment at Walmart since May 2021. *Id.* at 50-51.

Gibson further testified that Child has a very good relationship with the foster parents. *Id.* at 52. She stated that Child enjoys school, has friends, and is involved in multiple activities since living in her foster home. *Id.* at 53. Gibson has witnessed Child hugging and cuddling with the foster parents and stated that Child has a very positive bond with them. *Id.* at 53-54. Gibson also testified that although Child has a bond with Mother, Child worries about Mother and is concerned if Mother has a place to stay and is taking care of herself. *Id.* at 54. Gibson stated that she believed Child would suffer no emotional harm if Mother's parental rights were terminated. *Id.* at 55.

Mother's parent educator at Alternative Behavior Consultants, Michele Rush, testified that Mother successfully completed the Training Important Parenting Skills program. *Id.* at 28, 31. Rush stated that she helped Mother resolve her outstanding criminal matters and helped her complete a housing application in March 2021. *Id.* at 33.

Case manager Darrie'l Hadley testified that Child is doing very well in the foster home and is very happy there. *Id.* at 36. She stated that Child is "very bonded to the [foster] family, and she just has like a really good energy when she is around them[.]" *Id.* Hadley testified that Child does not really talk about her visits with Mother but Child seems to enjoy them. *Id.* at 36-37.

Child's therapist, Brianna Lightner, testified that Child is bonded to her foster parents. *Id.* at 7. She was unaware of whether Child had a bond with Mother. *Id.* Lightner testified that although terminating Mother's parental rights would have some impact on Child, she believed that Child had the tools

to work through that and Child would not suffer harm if Mother's parental rights were terminated. ***Id.*** at 6.

Tara Miller, from Diakon Child Preparation Services, testified that she has worked with Child since January 2021. ***Id.*** at 18-19. She stated that Child has a bond with the foster parents because she "always seems very happy there and comfortable." ***Id.*** at 22. Miller testified that Child informed her that she feels more stable at her foster home than when she lived with Mother. ***Id.*** at 24. Miller stated that Child has a bond with Mother, but she could not determine whether it was a healthy bond because she did have enough information about their relationship. ***Id.*** at 23-24.

Foster mother testified that both she and her husband love Child and are prepared to adopt her. ***Id.*** at 65, 68. She stated that Child has indicated that she would like to stay with them but continue to visit Mother. ***Id.*** at 70. Foster mother testified that if the termination petition was granted, she would continue to facilitate visits between Child and her biological siblings and would support ongoing contact between Child and Mother. ***Id.*** at 66-67.

Mother testified that she was making progress on her housing goal and had been on the housing waiting list for seven or eight months. ***Id.*** at 73-74. She stated that she had recently scheduled a mental health appointment at PA Counseling for November 4, 2021, two days after the termination hearing. ***Id.*** at 74. Mother said she has maintained employment at Walmart and purchased a minivan. ***Id.*** at 79-80. She said that she still lives in the same trailer that originally caused CCCYS to be involved, but the water issues have

been resolved. However, she conceded that the celling has not been repaired in over three years. *Id.* at 85-87. Mother asked the court "for a little more time to complete the housing[.]" *Id.* at 83.

Child's Guardian *ad Litem* ("GAL") indicated that Child loves Mother but made it very clear to her that she would like Mother's parental rights to be terminated and be adopted. *Id.* at 92-94. The GAL stated that Child "absolutely understands" what termination means and she feels Mother is incapable of taking care of her. *Id.* at 93-94. The GAL expressed that Child feels happy and excited about the prospect of her foster parents becoming her legal parents. *Id.* at 93. The GAL believed that it would be in Child's best interest for Mother's rights to be terminated and for Child to be adopted. *Id.* at 94.

Child's legal counsel concurred with the GAL and stated that Child's preference is clear - she wants the permanency of being adopted by foster parents. *Id.* at 94-95.

At the conclusion of the hearing, the court changed the permanency goal to adoption and terminated Mother's parental rights. *Id.* at 96. This appeal followed.

Counsel's **Anders** brief identifies two issues:

> 1. Did the Trial Court abuse its discretion or commit an error of law when it found, despite a lack of clear and convincing evidence, that the [C]hild's permanent placement goal of reunification with [Mother] was neither appropriate, nor feasible and ordered the goal change to adoption?

2. Did the Trial Court abuse its discretion or commit an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Mother's] parental rights in her [C]hild, and when it failed to primarily consider the [C]hild's developmental, physical and emotional needs and welfare?

*Anders* Br. at 4.

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must: 1) "petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined that the appeal would be frivolous;" 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Additionally, in the *Anders* brief, counsel seeking to withdraw must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

- 7 -

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at 355 n.5 (quoting *Commonwealth v. McClendon*, 434 A.2d 1185, 1187 (Pa. 1981)).

Here, we find that counsel has complied with all of the above technical requirements. In his *Anders* brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies two issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with citations to the record. Additionally, counsel served Mother with a copy of the *Anders* brief and advised her of her right to proceed *pro se* or to retain a private attorney to raise any additional points she deemed worthy of this Court's review. Motion to Withdraw, 1/18/22, at ¶ 22, Ex. A. Mother has not responded to counsel's petition to withdraw. As counsel has met the technical requirements of *Anders* and *Santiago*, we will proceed to the issues counsel has identified.

The first issue raised in counsel's *Anders* brief challenges the sufficiency of the evidence supporting termination of Mother's parental rights under 23 Pa.C.S.A. § 2511(a).

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa.Super. 2018)

(citation omitted). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (internal quotation marks and citation omitted in original).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants

- 9 -

termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the court terminated Mother's parental rights pursuant to subsection 2511(a)(8). *See* Trial Court Opinion, filed 12/16/21, at 5. That section states:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

Subsection 2511(a)(8) "sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been proven, the court "must next determine whether the conditions that led

to the child's removal continue to exist." *Id.* "As a result, the relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). "Termination under [subs]ection 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa.Super. 2010).

Here, it is undisputed that Child was removed from Mother's care for approximately 13 months. Therefore, we next focus our inquiry on whether the conditions which led to Child's removal from Mother's care continued to exist at the time the court terminated Mother's parental rights.

The court found that the conditions that existed at the time of Child's placement continued to exist at the time of the termination hearing. Trial Ct. Op. at 6. The court determined that although Mother successfully completed her goal of obtaining employment, Mother failed to complete her housing and mental health goals. *Id.* at 5-6. As a result, the court concluded that Mother had not remedied the original reasons for placement in a reasonable amount of time. *Id.* at 6. The court further concluded that termination would best serve the needs and welfare of Child. *Id.* at 7.

We discern no abuse of discretion. The record supports the court's finding that the conditions which led to Child's removal from Mother's home continue to exist. Mother admitted that she still lives in the same residence

that originally caused CCCYS to be involved. Gibson testified that she repeatedly directed Mother to complete a housing application, but Mother did not do so until March 2021 and she is now on a long waiting list. Therefore, Mother had not completed the goal of obtaining adequate housing. Gibson also testified that Mother failed to seek mental health treatment. Mother only recently scheduled a mental health appointment that was to occur two days after the termination hearing. We are instructed by section 2511(b) that we may not consider any effort by the parent to remedy the conditions described in subsection (a)(8) "if that remedy was initiated after the parent was given notice that the termination petition had been filed." *In re Z.P.*, 994 A.2d at 1121 (citation omitted).

Mother requested that the court allow her more time to complete her goals. However, Child cannot linger in care waiting for Mother to be in a position to meet Child's needs. This Court has explained:

> We recognize that the application of [subs]ection (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. . . .However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

*In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

- 12 -

Because Mother failed to remedy the situation that led to Child's removal from her care, and, as discussed below, termination of parental rights would best serve the needs and welfare of the Children, we find the trial court properly concluded that the requirements of subsection 2511(a)(8) were satisfied.

The second issue raised in counsel's *Anders* brief alleges that the court abused its discretion in finding that sufficient grounds existed for terminating Mother's parental rights when it failed to primarily consider Child's developmental, physical and emotional needs and welfare under 23 Pa.C.S.A. § 2511(b).

Under section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.* However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation and internal quotation marks omitted). The court must also examine

any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013).

Here, the court found that it was in Child's best interest to terminate Mother's parental rights and allow her to be adopted by her foster parents. Trial Ct. Op. at 7. The record supports the court's finding. There was ample testimony that Child is strongly bonded to her foster family and is very happy in her foster home. *See* N.T. at 7, 22, 36, 53-54. Although there was evidence Child has a bond with Mother, Child worries about Mother's well-being and recognizes that Mother is incapable of adequately caring for her. The court found that Child's foster parents love her and will provide Child with the permanency she deserves. Trial Ct. Op. at 7. We agree that CCCYS provided clear and convincing evidence that termination of Mother's parental rights would be in Child's best interest.

In sum, we find that the issues raised in counsel's *Anders* brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. Therefore, we grant counsel's motion to withdraw. Having determined that the appeal is wholly frivolous, we affirm the decree terminating Mother's parental rights. Because we affirm the termination order, the appeal from the goal-change order is moot. We therefore dismiss that appeal. *In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa.Super. 2020).

Motion to withdraw as counsel granted. Decree affirmed. Appeal dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/24/2022